FILED
United States Court of Appeals
Tenth Circuit

August 28, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PHILLIP DAREN SHOCKEY,

      Defendant-Appellant.

No. 08-7013

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. CR-07-46-012-RAW)**

Dennis N. Shook, Wagoner, Oklahoma, for Defendant-Appellant.

Sheldon J. Sperling, United States Attorney, and Christopher J. Wilson, Assistant United States Attorney, Muskogee, Oklahoma, for Plaintiff-Appellee.

Before **O'BRIEN, EBEL,** and **GORSUCH**, Circuit Judges.

**EBEL**, Circuit Judge.

Pursuant to a plea agreement, Defendant-Appellant Phillip Daren Shockey

pled guilty to two counts – Conspiracy in violation of 18 U.S.C. § 371 and

Possession of a Counterfeit Security with Intent to Deceive in violation of 18

U.S.C. §§ 513(a) & 2 – of a multi-count Indictment filed against him. As part of

his plea agreement, Shockey waived his right to appeal. Nonetheless, Shockey

now appeals his sentence, arguing that it is unlawful because it is ambiguous and

internally contradictory. We cannot reach the merits of Shockey's argument

because our precedent compels the conclusion that the appellate waiver contained

in Shockey's plea agreement is enforceable. As such, we dismiss his appeal.

## I.    BACKGROUND

Shockey was involved in a fraudulent check-cashing ring operating in

Oklahoma and Arkansas. On April 18, 2007, Shockey pled guilty to two forgery

related counts in Arkansas state court, along with one count of possessing drug

paraphernalia.[1] Less than ten days later, the Arkansas state court sentenced

Shockey to concurrent terms of 240 months' imprisonment on each of the three

counts.

On July 19, 2007, a grand jury indicted Shockey and a number of his co-

conspirators on a series of federal offenses related to the check-cashing scheme.

After plea negotiations, Shockey pled guilty to Count 1 of the Indictment

(Conspiracy in violation of 18 U.S.C. § 371) and Count 13 (Possession of a

Counterfeit Security with Intent to Deceive, in violation of 18 U.S.C. § 513(a) &

---

[1]In the Arkansas case, Shockey pled guilty to Count 1 (Forgery in the Second Degree), Count 2 (Criminal Possession of Forgery Device), and Count 3 (Possession of Drug Paraphernalia).

18 U.S.C. § 2). Shockey further agreed to waive his right to appeal his sentence, "except to challenge an upward departure from the applicable guideline range . . . ." In return, the government dismissed the remaining counts brought against Shockey.

The U.S. Probation Office prepared a presentence report ("PSR"); the PSR indicated that Shockey's advisory guidelines sentencing range was 95 to 112 months' imprisonment. Shockey responded to the PSR by asking the sentencing court to vary downwards and to impose concurrent terms of imprisonment. On January 31, 2008, the court sentenced Shockey to "95 months [in prison] on Count One, and 95 months on Count Thirteen. Said terms are <u>to be served concurrently with one another and concurrently with Counts 1 and 2</u> [the forgery related counts] of Sebastian County, Arkansas Circuit Court case number CR-2007-327, <u>but consecutively to Count 3</u> [the drug paraphernalia count] of Sebastian County, Arkansas Circuit Court case number CR-2007-327." (Emphasis added). Thereafter, the court amended the sentence, imposing 60 months' imprisonment for Count One and 95 months for Count Thirteen. The court reiterated, however, that the terms were to be served concurrently with one another and with Counts 1 and 2 of Shockey's state sentence, but consecutively to Count 3 of Shockey's state sentence. Shockey timely noticed his appeal. The government filed a motion to enforce Shockey's appellate waiver pursuant to Tenth Circuit Rule 27.2(A)(1)(d). Because of the apparent ambiguity of

Shockey's sentence, a panel of this court referred the government's motion to a merits panel.

## II.    DISCUSSION

At the outset, we note that we have jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1291.  See United States v. Hahn, 359 F.3d 1315, 1322 (10th Cir. 2004) (en banc) ("[W]e have statutory subject matter jurisdiction under § 1291 over sentencing appeals even when the defendant has waived his right to appeal in an enforceable plea agreement.").

We turn next to whether Shockey's plea agreement "includes an enforceable waiver that compels our dismissal of [his] underlying claims." United States v. Montano, 472 F.3d 1202, 1204 (10th Cir. 2007).  Hahn adopted a three-prong analysis for determining whether an appellate waiver is enforceable. See 359 F.3d at 1325.[2]

Under Hahn's third prong, "[a] waiver of appellate rights in a plea agreement cannot be enforced if doing so would result in a miscarriage of

---

[2]Specifically, under Hahn, "the court of appeals, in reviewing appeals brought after a defendant has entered into an appeal waiver [must] determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . ."  Hahn, 359 F.3d at 1325.  Shockey concedes that his argument on appeal falls within the waiver's scope and that he agreed to the waiver knowingly and voluntarily.  Thus, only the third prong is at issue here.

justice." United States v. Rodriguez-Rivera, 518 F.3d 1208, 1216 (10th Cir.

2008) (citing Hahn, 359 F.3d at 1325).

> A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful."

Id. (quoting Hahn, 359 F.3d at 1327).  As the Hahn court underscored, that list is

exclusive: "enforcement of an appellate waiver does not result in a miscarriage of

justice unless enforcement would result in one of the four situations enumerated"

above.  359 F.3d at 1327; see also United States v. Green, 405 F.3d 1180, 1191

(10th Cir. 2005) ("Hahn details the only four situations in which enforcement of

an appellate waiver may result in a miscarriage of justice.").

Shockey concedes that he bargained away the bulk of his ability to

challenge his sentence in his plea agreement.  However, he contends that the

sentence imposed by the district court falls within the fourth exception listed in

Hahn.  Relying on United States v. Dougherty, 106 F.3d 1514 (10th Cir. 1997),

Shockey specifically argues that the sentence is so ambiguous as to be unlawful

and that enforcement of the waiver in such a situation would amount to a

miscarriage of justice.

Our precedent forecloses Shockey's contention.  In United States v. Smith,

500 F.3d 1206 (10th Cir. 2007), we noted that the fourth Hahn exception "looks

to whether 'the waiver is otherwise unlawful,' not to whether another aspect of

the proceeding may have involved legal error." Id. at 1213 (citation omitted); see also United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005) ("The relevant question, however, is not whether Porter's sentence is unlawful in light of Booker's remedial holding, but whether subsequent changes in the law render his appeal waiver itself unenforceable."). "To allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." Smith, 500 F.3d at 1213.

As inscrutable as Shockey's sentence is, enforcement of his plea agreement's appellate waiver would not render the waiver itself unlawful. See id. Dougherty is not to the contrary. There, the court explained what constitutes an "illegal sentence," but did so for purposes of reviewing a district court's denial of a defendant's motion to vacate or correct an illegal sentence, filed pursuant to Fed. R. Crim. P. 35(a). Dougherty, 106 F.3d at 1515. Nothing in Dougherty casts Shockey's waiver as unlawful. Thus, Shockey's situation does not fall within one of the four exceptions enumerated in Hahn. We are constrained to conclude that the waiver is enforceable.

## III.  CONCLUSION

Accordingly, we DISMISS Shockey's appeal without reaching the merits.